# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANTONIO D. LAY,

                    Petitioner,               Case No. 2:18-cv-11788
                                                Hon. Victoria A. Roberts

v.

GREG SKIPPER,

                    Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Antonio D. Lay ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Genesee Circuit Court of two counts of armed robbery, MICH. COMP. LAWS § 750.529; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. As a result of these convictions, Petitioner is serving a sentence of 27 to 42 years' imprisonment.

Petitioner raises eleven claims in his habeas petition: (1) insufficient evidence was presented at trial to establish Petitioner's identity as one of the perpetrators, (2) the jury's verdict was against the great weight of evidence, (3) Petitioner was denied his right to counsel of choice, (4) the sentencing guidelines were incorrectly scored, (5) Petitioner was erroneously precluded from presenting alibi witnesses, (6)

Petitioner's trial counsel was ineffective for failing to interview prosecution witnesses, (7) Petitioner's trial counsel was ineffective for failing to call co-defendant as a witness to testify that Petitioner was not involved in the crime, (8) the trial court erred in confirming that witnesses identified Petitioner in court instead of allowing the jury to determine who the witnesses pointed to, (9) Petitioner's trial counsel was ineffective for allowing a surprise prosecution witness to testify, (10) the trial court erred during jury selection by stating that conviction was warranted upon "mere evidence of guilt," and (11) the trial court erred during jury selection by informing the jury that the events occurred in Genesee County.

Petitioner's claims are without merit. The Court denies this petition and also a certificate of appealability as well as permission to appeal in forma pauperis.

## I. Background

The Court recites verbatim the relevant facts as summarized by the Michigan Court of Appeals. They are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from a home invasion and robbery at the home of Sharise Miller. During the evening of November 3, 2014, Sharise's adult sons, Antonio Miller and Thomas Miller, were at the home with Sharise's niece, Laquetta Cade, Sharise's cousin, Treyvon, and her nephews, Demetrious and Dominique. Everyone, with the exception of Sharise and Cade, was in the dining room "shooting dice." Around 8:00 or 8:30 p.m., another of Sharise's sons, Edward Miller, arrived at the home with Artrell Lay, Saseen Lay, and defendants. Sharise engaged in a conversation with defendants for approximately 35 minutes. She did not observe either defendant "gambling," but defendant-Lay told Sharise that he lost money in "side betting." Sharise observed that both defendants had facial tattoos, with Lay having a tattoo that said "haze" by his eye, the letter "B" tattooed on the left side of his face, and a tattoo of the New York Yankees sign. Both defendants were wearing "all

black," and Reynolds was wearing a Gucci belt. Edward asked Sharise if he could borrow $10 from her. Sharise counted out $293 or $294 while sitting on her bed, which could be seen from the dining room, but she did not loan any of the money to Edward. Edward, Artrell, Saseen, and both defendants left the home around 10:30 p.m., while Treyvon, Demetrious, and Dominique left approximately ten minutes later.

Shortly after midnight, Sharise testified that she was in her bedroom when defendants kicked in the front door of the home and entered without permission. She described defendants as both wearing the same clothing that they had been wearing earlier that night but with black ski masks. Sharise heard someone say, "Get on the . . . floor." According to Sharise, Reynolds went to her room, put a gun to her head, and made her sit on the floor against the wall. Sharise stated that both defendants were holding guns. Thomas was lying flat on the kitchen floor, and Sharise observed him being beaten on the head with a gun by Lay, and she observed Antonio lying flat on the dining room floor being stomped on by Reynolds. Sharise stated that she could see both defendants' eyes through the eye holes in the ski masks, and she observed the "dots" of a tattoo near Lay's eye. Cade testified that she saw Reynolds's dreadlocked hair sticking out of the ski mask and saw the tip of a tattoo through his mask. According to Cade, defendants took $10 and a cell phone from her. Sharise testified that she gave Reynolds $293 from the pocket of a coat hanging on her door.
The robbery lasted about 20 minutes.

After the robbery, Sharise called 911 and gave a description of the perpetrators to the 911 operator. She also called Edward and told him that she had been robbed and that his friends had committed the robbery. When police arrived, Sharise told Officer Eric White that two men who were at her home earlier that evening had committed the robbery, and she provided the names of the suspects. The next morning, both Sharise and Cade separately identified defendants in photographic arrays.

Police obtained warrants for both defendants' arrests and referred the matter to a fugitive team for arrests on the warrants. The team set up surveillance and observed one or both defendants loading items into a vehicle. Officers followed the vehicle to the parking lot of a Taco Bell restaurant and arrested defendants in the parking lot. A duffel bag found in the vehicle contained a rifle matching Sharise's description, a handgun, ammunition, and rubber or latex gloves. A black ski mask was found in the car, and a black ski mask was found on Reynolds's person. Reynolds was also wearing a Gucci belt at the time of the arrest.

Sharise identified a photo of the Gucci belt recovered from Reynolds as similar to the one he wore at her home that night. Sharise identified the handgun recovered during the arrest as "the same gun" held to her head "if you put the barrel back on." Cade also identified the rifle.

During interviews with police, Lay stated that Reynolds had committed the robbery "with another of his friends" and he denied taking part in the robbery.[1] Reynolds admitted to being present at the time of the robbery but claimed that he stood outside during the robbery and denied taking an active role in the robbery.[2] Reynolds told police that he went back to the home "out of loyalty" but would not say to whom he was loyal. He denied that Lay participated in the robbery, and he denied wearing a ski mask or having a gun that night.

___

[1] This testimony was admitted only in front of Lay's jury.
[2] This testimony was admitted only in front of Reynolds' jury.

*People v. Lay*, 2017 WL 3316948, at *1-2 (Mich. Ct. App. Aug. 3, 2017).

Following his conviction and sentence, Petitioner filed a claim of appeal. His brief on appeal filed by his appellate attorney raised the following claims:

I. There was insufficient evidence to convict the defendant of any of the five counts of which he was convicted because the evidence was insufficient to show the identity of the defendant as one of the perpetrators of these offenses.

II. The verdicts were against the great weight of evidence and the defendant should receive a new trial.

III. The defendant was denied his constitutional right to counsel of his choice because the trial court dismissed his concerns about his appointed lawyer without adequate inquiry.

IV. The sentencing guidelines were scored incorrectly and the defendant should be resentenced.

Petitioner later retained a second appellate attorney who was permitted to file a supplemental brief that raised an additional set of claims:

I. Defendant-Appellant is entitled to a new trial where he was deprived of a substantial defense due to his attorney's failure to comply with the

alibi defense notice, which resulted in the trial court judge banning Defendant-Appellant from presenting an alibi defense.

II. Where the prosecution's case relied solely on witness testimony, trial counsel's complete failure to investigate and complete failure to subject the prosecution's case to meaningful adversarial testing by failing to conduct any pretrial investigative interviews of any of the prosecution's witnesses constructively deprived Defendant-Appellant of his Sixth Amendment right to counsel.

III. Defendant-Appellant was deprived of his right to the effective assistance of counsel where Defendant-Appellant's co-defendant Kashif Reynolds made a pre-trial statement insisting that "Antonio Lay was not present during the robbery" but Defendant-Appellant's trial court counsel failed to engage in routine investigation and never interviewed codefendant Kashif Reynolds.

IV. Where identity of the perpetrator was an essential element and a question of fact for the jury to determine, the trial court judge invaded the province of the jury and pierced the veil of judicial impartiality by confirming each eyewitnesses' in-court identification with the order that the record reflect that the witnesses pointed to and identified Defendant-Appellant, when it is strictly up to the jury to determine who was pointed to and who was identified.

V. Counsel was constitutionally ineffective where he failed to move to have adverse surprise witness Steven Schabel barred from testifying where the prosecution completely failed to notify the defense that he was a witness who would be called to testify at trial.

VI. Reversal is required where the trial court judge told the jury during voir dire that the verdict could rest on evidence of mere guilt, i.e., by a preponderance of evidence, rather than guilt "beyond a reasonable doubt" thereby creating structural error because there is a significant possibility that the verdict rested on mere evidence of guilt and not on the constitutionally required standard of guilt beyond a reasonable doubt.

VII. The trial court judge unconstitutionally invaded the province of the jury when it instructed the jury that the charged crimes actually occurred and specified the venue of "where this occurred" thereby substantially alleviating the prosecutor's burden of proof by partially directing a verdict.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Lay*, 2017 WL 3316948. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that were raised in both briefs filed in the Michigan Court of Appeals. The Michigan Supreme Court denied the application by form order. *People v. Lay*, 910 N.W.2d 274 (Mich. 2018) (Table).

## II. Discussion

<u>A. Sufficiency of the Evidence</u>

Petitioner's first two habeas claims challenge the sufficiency of the evidence presented at trial to establish his identity as one of the perpetrators of the crime. His first claim is a constitutional due process based challenge, and his second claims is a state law challenge to the "great weight of the evidence." The first claim was reasonably rejected by the Michigan Court of Appeals, and the second claim is not cognizable in this action.

After reciting the applicable constitutional standard, the state court rejected the first claim as follows:

> Here, both Sharise and Cade unequivocally identified Lay as one of the robbers. The evidence revealed that each victim selected Lay from a photographic lineup without hesitation and identified Lay as one of the robbers at trial. Sharise had seen and spoken to defendants at her house earlier the same evening and testified that she recognized the robbers as Lay and Reynolds because they were wearing the same clothing that they had been wearing earlier in the evening. Sharise also knew that Lay had tattoos on his face, and she was able to view a small part of a tattoo through the eyehole of the ski mask that Lay was wearing. Cade also had observed defendants earlier in the evening and testified that the clothing the robbers wore matched the clothing that defendants wore. This testimony was sufficient to establish Lay's identity as one of the robbers.[4]

———
[4] Apart from the positive and unequivocal identifications, the guns found in Lay's presence at his arrest matched the description given by Sharise.

*Lay*, 2017 WL 3316948, at *2 (footnote 3 omitted).

This decision reasonably applied the constitutional standard. The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In applying this standard, a reviewing court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Two witnesses identified Petitioner as one of the perpetrators. Their identification testimony was supported by the fact that Petitioner was at the house earlier that night. Petitioner's challenge to these witnesses' credibility is not a challenge to the constitutional sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. See *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

Petitioner's related second claim is a state law claim that is not cognizable in this action. Whether a verdict is in line with the "great weight of the evidence" is a matter of state law that does not present a federal constitutional question on habeas review. See, e.g., *Brown v. Winn*, 2018 WL 5619601, at *2 (6th Cir. Sept. 12, 2018);

*Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); *Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

Neither of Petitioner's first two claim have merit.

## B. Counsel of Choice

Petitioner's third claim asserts that he was denied his Sixth Amendment right to counsel of choice when during a pretrial hearing he expressed dissatisfaction with his attorney and asked to be appointed a new attorney. The Michigan Court of Appeals summarized the relevant record with respect to these claims, and it essentially found that any problems Petitioner had with his counsel were adequately addressed and that Petitioner abandoned the request for new counsel by not raising the issue at subsequent pretrial hearings:

> Lay requested substitute counsel at one pretrial hearing on April 6, 2015. At that hearing, the trial court addressed each of Lay's concerns. At the next pretrial hearing on May 18, 2015, the court noted that Lay had written a letter to the court and asked Lay if there were any issues that he wanted to discuss. Despite Lay's negative response, the court asked Lay about his allegation that he had not received "paperwork," and the court then told the prosecutor and defense counsel to work together to provide Lay with copies of any reports that he did not have. Lay did not express any dissatisfaction with counsel during the next five pretrial hearings between June 1 and August 3, 2015. Lay did express dissatisfaction with counsel in a letter that was received by the court on August 10, 2015, but at the next pretrial hearing on August 20, 2015, Lay did not express a desire for substitute counsel or raise any issues regarding counsel with the court.

> Lay acknowledges that he did not address the concerns expressed in the August letter at any pretrial hearing subsequent to authoring the letter, but he argues that the letter should have been enough to generate

an inquiry by the trial court. However, the trial court had previously addressed Lay's concerns by ordering counsel to provide Lay with copies of any reports that he had, ordering a polygraph examination, and ensuring that Lay would have clothing for trial. And, in May 2015, the trial court addressed the same grievance that Lay subsequently attached to the August 10, 2015 letter. A trial court is obligated to inquire about the truth of a defendant's allegations that there is a dispute which has led to the destruction of communication and a breakdown in the attorney-client relationship. *People v. Bass*, 88 Mich. App. 793, 802 (1979). Lay's dissatisfaction here stemmed from an alleged lack of personal contact and communication with his counsel, and Lay did not assert that a dispute existed or that there was a fundamental trial tactic involved. Thus, Lay's August 2015 letter was not supported by good cause, and the trial court did not abuse its discretion by failing to again explore Lay's dissatisfaction with his appointed counsel.[7]

_____

[7] Moreover, the record indicates that counsel was familiar with the facts of the case, diligently examined witnesses, made relevant objections, and acted diligently throughout to protect Lay's rights. Thus, even if the trial court had address[ed] Lay's allegations and denied the request for a substitution of counsel, it would have not abused its discretion by denying the request. Any error was harmless.

*Lay*, 2017 WL 3316948, at *3 (footnote 6 omitted).

This adjudication was reasonable. The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant representation by a particular attorney. *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). Nevertheless, "[a] criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id*. (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "'the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant

even though he is without funds.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale*, 491 U.S. at 624-25).

The right to counsel of one's choice is a qualified right. *Serra*, 4 F.3d at 1348 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice "is not absolute." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) (citations omitted). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984); see also *Gonzalez-Lopez*, 548 U.S. at 151-52) ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them . . . We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.") (internal citations omitted).

Several factors are relevant when reviewing a motion for substitution of counsel: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it

deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id*. at 663-64.

Affording the trial court the deference it is due, the record reasonably supports the Michigan Court of Appeals' determination that the trial court made an adequate inquiry into Petitioner's complaints about his attorney. Petitioner requested substitute counsel at an April 6, 2015, pretrial conference. ECF No. 7-3, at 3. Petitioner complained that his counsel did not present him with the paperwork necessary for him to prepare his defense. Id. at 4. He requested a police report, apprehension paperwork, and all photographs. Id. at 4-5. Petitioner also indicated that he had requested a polygraph test but that counsel had not set one up. Id. at 5. Defense counsel responded that he would provide Petitioner with the paperwork he had, and the prosecutor agreed to set up a polygraph test. Id. at 6.

At the next pretrial conference, the trial court noted that Petitioner sent her a letter which she passed along to defense counsel. ECF No. 7-4 at, 3. The parties indicated that a polygraph test was scheduled, and they were awaiting DNA test results. Id. at 3. The trial court then asked Petitioner if he wanted to raise any concerns, and he responded "no." Id. at 4. Nevertheless, the court on its own motion addressed Petitioner's previous concerns. Id. Defense counsel indicated that he had given Petitioner everything he had. Id. Petitioner then stated that he had not received copies of a police report, apprehension report, and photographs he had seen in the state district court. Id. at 5-6. The trial court ordered the parties to copy the paperwork and provide it to Petitioner. Id. at 7. Four additional pretrial conferences

were held during which Petitioner expressed no complaints about his counsel or his failing to receive records.

Petitioner addressed the Court at a later pretrial conference held on August 3, 2015, regarding the polygraph examination report. ECF No. 7-9, at 7. Defense counsel explained that he discussed the report with Petitioner, and he would deliver an additional two-page report to Petitioner when he visited with Petitioner the next day. Id. at 7-8. Petitioner never raised the issue of substitute counsel, nor did he raise the issue again at the final pretrial conference held on October 30, 2015. Similarly, Petitioner never raised the issue of substitute counsel during trial.

On this record it was reasonable for the state appellate counsel to essentially conclude that Petitioner abandoned his initial request for substitute counsel after his concerns were resolved in the weeks leading up to trial. The trial court's initial inquiry into Petitioner's request addressed the reasons for Petitioner's dissatisfaction and adequately protected Petitioner's right to counsel of choice. The court ascertained that Petitioner was displeased because his counsel had not provided him with documents. The court followed-up on the request on its own motion at a subsequent conference, and Petitioner expressed no desire for substitute counsel at that time or at any subsequent point during proceedings in the trial court. It is apparent that the provision of the documents allayed Petitioner's concerns about his counsel, and that he thereafter abandoned his desire for a new attorney. The claim is  without merit.

C. Sentencing Guidelines

Petitioner contends that the trial court incorrectly scored two of the Michigan Sentencing Guidelines offense variables. He asserts he was erroneously scored points for possessing a short-barreled rifle and for moving the victim into a bedroom. The claim is not cognizable on federal habeas review.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5. Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. See *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Finally, no Sixth Amendment issue was implicated by the scoring of the guidelines because Petitioner was sentenced under the post-*People v. Lockridge*, 498 Mich. 358 (2015), non-mandatory version of the sentencing guidelines. *See, e.g., Clarmont v. Chapman*, 2019 U.S. Dist. LEXIS 211079, *8, 2019 WL 6683852 (E.D. Mich. Dec. 6, 2019). This Court is bound by the state court's rejection of Petitioner's claim that the trial court improperly applied the Michigan sentencing guidelines.


D. Effective Assistance of Counsel

Petitioner raises several claims of ineffective assistance of trial counsel. In his fifth claim, Petitioner argues that his counsel failed to file a notice of alibi, depriving him of the opportunity to raise that defense at trial. In his sixth claim, Petitioner asserts that his counsel failed to interview any of the prosecution witnesses. Petitioner's seventh claim asserts that his counsel failed to call his co-defendant as a witness at trial to testify that Petitioner was not present during the crime. Finally, Petitioner's eighth claim asserts that his attorney was ineffective for the failing to move to prevent prosecution witness Steven Schabel from testifying when the prosecution failed to include him on its witness list.

All these claims were reviewed and rejected on the merits by the Michigan Court of Appeals. Ineffective assistance claims are reviewed under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *Id*. at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

When reviewing a state court's denial of an ineffective assistance of counsel claim under the *Strickland* standard, federal courts undertake a "doubly deferential" standard of review. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The *Strickland*

analysis is itself "highly deferential" to counsel's performance. *Strickland*, 466 U.S. at 689. When reviewing a state court's decision under 28 U.S.C. § 2554(d), "review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376. "The question [on habeas review] is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

1. Failure to File Notice of Alibi

After reciting the *Strickland* standard, the Michigan Court of Appeals found that counsel was not ineffective for failing to file a notice of alibi because the purported alibi witness, Edward Miller, testified at trial and did not indicate that Petitioner was with him at the time of the crime:

> [W]e note that there is no support in the record for Lay's contention that the trial court's ruling prompted his counsel to refuse to let Lay testify on his own behalf concerning his whereabouts at the time of the offenses. Lay identifies one witness whose testimony he alleges would have supported his alibi defense – Edward Miller. Lay has not established that Edward would have offered favorable alibi testimony.[11] Edward's purported testimony is not on the record. Further, Edward testified at trial that after leaving Sharise's house he was dropped off at Lay's brother's house and then went home. Thus, Edward's testimony at trial indicated that he did not actually know where Lay was at the time of the robbery, and, therefore, there is no indication that he could have even provided an alibi. See *People v. McMillan*, 213 Mich. App. 134, 140-141 (1995). Thus, even if counsel's failure to provide notice under MCL 768.20(1) fell below an objective standard of reasonableness, Lay has not shown that there was a reasonable probability that the outcome of the proceedings would have been different.
>
> _____
> [11] Lay did not make an appropriate offer of proof regarding any potential alibi testimony. Lay relies on hearsay testimony offered by Sharise at the preliminary examination regarding comments Edward purportedly made to her.

*Lay*, 2017 WL 3316948, at *8.

This decision resulted in a reasonable application of the *Strickland* standard. First, this claim was raised in Petitioner's supplemental brief filed in the Michigan Court of Appeals and was not supported by affidavits from any proposed alibi witnesses. On that basis alone, the state appellate court reasonably rejected the claim. "It should go without saying that the absence of evidence [to support a claim] cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689); see also *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) (Petitioner unable to demonstrate *Strickland* prejudice where he offered no evidence to state court or federal habeas court beyond his own assertions to prove what content of uncalled witnesses would have been).

Furthermore, Petitioner's argument that Edward Miller would have provided alibi testimony is contradicted by the trial record. Petitioner asserts that Miller would have testified that Petitioner, Latrell Lay, and Shaweinee Lay all rode away from the victim's house together before the time of the crime. But at trial Miller testified that he came to his mother's house with Petitioner, co-defendant Reynolds, Petitioner's sister, and Latrell Lay. ECF No. 7-14, at 269-270. He testified that they left the house after 10:30 and drove to Latrell's house. Id. at 269-270, 273, 278. Miller stated that Petitioner's sister and Latrell went into the house, but Petitioner and his co-defendant walked away. Id. at 275-276, 307. Miller passed them as he drove away. Id. at 291, 292, 329. Edward testified that sometime after midnight he received a call

from his mother that she was robbed by his friends. Id. at 271. Enough time passed for Petitioner and his co-defendant to return to the scene in another vehicle and commit the robbery. Because there was a window of opportunity for Petitioner to commit the crimes even under his alibi witness's version of events, Petitioner was not prejudiced by counsel's failure to raise an alibi defense. See e.g. *Fargo v. Phillips*, 58 F. App'x 603, 607-08 (6th Cir. 2003).

## 2. Failure to Interview Prosecution Witnesses

Petitioner claims that his counsel was ineffective for failing to interview any of the prosecution witnesses prior to trial. Again, this claim was unsupported in the state appellate court with any affidavit or other offer of proof, and the court relied on that failure to deny relief:

> Lay also argues that trial counsel was ineffective by failing to interview any of the prosecution's witness as part of a pretrial investigation of the case. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v. Grant*, 470 Mich. 477, 493 (2004). On this record, it cannot be determined what pretrial investigation actions trial counsel took. It is possible that counsel actually met with some or all of the witnesses on the prosecution's witness list, and it is equally possible that defense counsel sat back and made no investigation. Defendant's failure to move for a *Ginther* hearing precluded him from being able to create the factual record necessary to evaluate this claim. We can make no assumptions and, therefore, cannot adjudge counsel ineffective. Accordingly, we reject this ineffective assistance claim.

*Lay*, 2017 WL 3316948, at *8.

As an initial matter, the state court appropriately summarily denied relief on a claim founded on conclusory allegations lacking a proffer of supporting facts. See *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Other than his self-serving

allegations, Petitioner proffered the state court with no evidence to demonstrate that his counsel failed to interview the prosecution witnesses or otherwise failed to adequately prepare for their testimony at trial.

In any event, the trial record belies Petitioner's claim as it demonstrates that defense counsel was prepared to cross-examine the prosecution's witnesses. Counsel impeached Sharise Miller with her description of the perpetrators on the 9-1-1 recording. ECF No. 7-14, at 60-61, 71; ECF No. 7-15, at 157. His additional cross-examination of this witness likewise demonstrates his familiarity with her prior statements. ECF No. 7-14, at 61-62, 70, 75-76, 77, 82-83. Counsel demonstrated his familiarity with Laquetta Cade's prior statements by obtaining a concession from her that she told police everything she knew about the crime, and then having an officer testify that Cade would not give him any details about the incident. Id. at 186-187, 200-204, 224-227; ECF No. 7-15, at 142-143.

Counsel likewise effectively cross-examined Edward Miller, demonstrating his pretrial preparation and familiarity with the evidence the prosecutor would present at trial. ECF No. 7-14, 273-307. Counsel impeached the credibility of Miller and Cade through his cross-examination of officer Eric White, who took their statements. ECF No. 7-15, 147-157. Similarly, counsel used the testimony of Detective Michael Veach to impeach the victims' description of the perpetrators and by attacking the adequacy of the police investigation. Id. at 233-237, 247-248.

In other words, a fair and reasonable reading of the record belies Petitioner's claim that his counsel failed to conduct a professionally adequate pretrial

investigation. To the contrary, the record shows that counsel was prepared for trial and effectively presented Petitioner's defense.

## 3. Failure to Call Co-Defendant as Defense Witness

Petitioner claims that his co-defendant told police that Petitioner was not present at the crime scene, and that he should have called him as a defense witness at trial. The state appellate court rejected the claim, in part, because Petitioner failed to demonstrate that Reynolds would have testified to making the statement (which would have also admitted his own guilt) instead of invoking his Fifth Amendment privilege:

> Lay argues that trial counsel was ineffective by failing to interview Reynolds despite knowing that Reynolds had stated to police that Lay was not a participant in the robbery and by failing to call Reynolds to testify on Lay's behalf. Again, it is not apparent on this record that trial counsel failed to interview Reynolds or to conduct a proper investigation. Defendant did not move for a *Ginther* hearing, and we cannot speculate about what Reynolds would or would not have said on the stand had he been called. Therefore, Lay has not established the factual predicate for his claim. See *Hoag*, 460 Mich. at 6.

> With respect to defendant's claim that his counsel was ineffective for failing to call Reynolds to testify, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v. Horn*, 279 Mich. App. 31, 39 (2008). Lay has failed to overcome this strong presumption in light of the lack of record evidence that Reynolds would have testified favorably for Lay, or indeed testified at all rather than invoked his privilege against self-incrimination. Additionally, Lay was not prejudiced. "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v. Dixon*, 263 Mich. App. 393, 398 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Kelly*, 186 Mich. App. 524, 526 (1990). Here, Lay claims that Reynolds would have testified that Lay was not present when the crimes were committed. However, this defense was submitted to the jury by way of Lay's own statements made during his police interview. We

also find it unlikely that a jury would have believed the testimony of a codefendant over several other witnesses who testified to defendant's involvement in the crime. Accordingly, we reject defendant's ineffective assistance claim.

*Lay*, 2017 WL 3316948, at *8-9.

Petitioner fails to support this claim with any proffer that Reynolds would have testified favorably for his defense. First, Reynolds did not admit his guilt at trial. In light of Reynold's defense, there is no reasonable probability that Reynolds would have testified at trial that he was involved in the crime but Petitioner was not. It is far more likely that had Reynolds been called by Petitioner, he would have invoked his right against self-incrimination or denied knowledge of who was involved. In any event, there is considerable risk associated with calling a co-defendant to testify because if the witness does not hold up well on cross-examination, jurors might draw unfavorable inferences against the party calling him. See, e.g., *United States v. Staples*, 410 F.3d 484, 489 (8th Cir. 2005). Counsel did not perform deficiently by failing to call co-defendant Reynolds as a defense witness.

4. Failure to Challenge Surprise Prosecution Witness

Finally, Petitioner claims that his counsel failed to move to exclude the testimony of prosecution witness Steven Schabel. The state court noted that Petitioner was not prejudiced because Schabel - a member of the fugitive team who seized the evidence from the vehicle - was a late substitution for another member of the task force who would have testified to the same facts:

It appears from the record that the prosecutor violated MCL 767.40a by not disclosing Schabel on a witness list. However, the record also indicates that Schabel was not a "surprise" witness as Lay contends.

20

Schabel was a member of the fugitive team involved in Lay's arrest and in the seizure of the evidence from the vehicle in which Lay was arrested. The items seized during the arrest were discussed at several pretrial hearings. Thus, it appears unlikely that trial counsel would have been "surprised" and "ambushed" by Schabel's testimony. Additionally, Schabel testified in place of another witness who was on the prosecutor's list, Trooper Shingleton. The prosecutor stated that it was seeking to substitute Schabel for Shingleton because, while both were able to provide testimony about what evidence was seized upon defendant's arrest, Schabel was in a better position to provide specific details. Both defendants' counsel expressed on the record that they had no objection, and it is not apparent from the record that this decision fell below an objective standard of reasonableness.

Additionally, Lay has not identified any unfair prejudice arising from counsel's failure to object to Schabel's testimony. He simply asserts that Schabel's testimony was "damning." However, evidence presented by the prosecution in a criminal case is generally damaging for the defense. And, even if Schabel had not testified, it appears that the same or very similar testimony would have been admitted through Shingleton. Law has not demonstrated how Schabel's testimony was sufficiently more prejudicial to his case than what Shingleton's would have been.

*Lay*, 2017 WL 3316948, at *9.

As with Petitioner's other allegations of ineffective assistance of counsel, the state court's decision here was not unreasonable. When the prosecutor discovered that Schabel was in a better position to testify as to the circumstances of the arrest and search of the vehicle, he proposed the witness substitution to defense counsel who both indicated their preference for Schabel. ECF No. 7-15, at 77-78. Schabel was preferable to the other witness as far as Petitioner's counsel was concerned because Schabel testified on cross-examination to finding the objects associated with the crime in a duffel bag in the vehicle and not in Petitioner's physical possession. Id. at 178-179.

Moreover, Petitioner failed to demonstrate that the trial court with reasonable probability would have prevented Schabel from testifying had an objection been made. The probability is the objection would have been denied or that Shingleton's similar testimony would have been presented instead of Schabel's. Petitioner has therefore failed to demsontrate that he was prejudiced by his counsel's decision to agree to have Schabel testify instead of Shingleton.

Accordingly, all of Petitioner's ineffective assistance of counsel claims are without merit.

E. In Court Identification of Petitioner

Petitioner next raises the unique claim that the trial court invaded the province of the jury by confirming on the record that witnesses were pointing to or describing Petitioner and his co-defendant in the courtroom when identifying the men they saw on the night of the crime. See ECF No. 7-13, at 166-167; ECF No. 7-14, at 33.

In support of this claim Petitioner relies on general Supreme Court pronouncements regarding judicial bias and the exclusive province of the jury to determine facts. He cites no case forbidding the commonplace occurrence complained of here. "Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted). Identifying clearly established federal law is thus the "threshold question under AEDPA." *Williams v. Taylor*, 529

U.S. 362, 390 (2000). In answering this threshold question, we must consult "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotation marks omitted). As Petitioner has cited no Supreme Court holding prohibiting a trial court from clarifying the trial record as to whom a witness identifies in the courtroom, he has failed to demonstrate entitlement to habeas relief with respect to this claim.

## F. Trial Court's Statements

Petitioner's final two claims challenge statements made by the trial court during jury selection. Neither merits much discussion.

The first statement occurred when the court questioned a potential juror. The trial court informed the juror that Petitioner "is presumed innocent" and "the People must prove his guilt beyond a reasonable doubt." The court then asked, "If the People prove the Defendant is guilty would you be able to come back and say guilty?" *Lay*, 2017 WL 3316948, at *11-12. Petitioner complains that the court omitted the beyond-a-reasonable-doubt standard from the last statement, reducing the prosecutor's burden to what he labels "mere proof." Apart from the fact that the jury was ultimately properly instructed regarding the burden of proof at the end of the trial - a point Petitioner does not contest - Petitioner's complaint requires an overly constrained interpretation of the record. Seconds before the complained of remark, the court instructed the prospective juror on the presumption of innocence and the proper standard of proof. There is no reasonable probability that the jury understood

the burden of proof to be less than constitutionally required. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

Petitioner next asserts that the trial court erroneously informed the prospective jurors that the crimes occurred in Genesee County, an element of the offense. The record shows, however, that the comment occurred in the context of the trial court informing the jury of what the charges were. This included the statement, "Now the address where this occurred so that you might wonder is 6094 Natchez, as I said, Mount Morris Township, Genesee County, MI." *Lay*, 2017 WL 3316948, at *14. At the beginning of the statement the trial court more clearly indicated that the charging documents were the prosecutor's allegations. Id. at *13. Nothing in the record suggested that the trial court was directing the prospective jurors to make a predetermined finding of fact as to the location of the crime.

In any event, at the close of trial the trial court properly instructed the jury that any such statements should not be considered evidence:

> Any comments, rulings, questions or instructions from the Court are also not evidence. Members of the Jury it is my duty to see the trial is conducted according to the law, and tell you the law that applies to the case. However, if I gave an instruction or sustained an objection, I was not trying to influence your vote or express to you my personal opinion about the case. If you believe I have an opinion about how you should decide the case you must pay no attention to that opinion. You are the only judges of the facts, and you and you alone will be deciding the case based on the evidence.

ECF No. 7-16, at 106.

Jurors are presumed to follow their instructions. See *Penry v. Johnson*, 532 U.S. 782, 799 (2001). Here, the jury was clearly instructed that it could not consider the court's comments, ruling, questions or instructions as evidence.

As none of the Petitioner's claims merits relief, the petition is denied.

### III. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Here, jurists of reason would not debate the Court's conclusion that Petitioner failed to demonstrate entitlement to habeas relief with respect to his claims because the petition is devoid of merit. A certificate of appealability is denied.

If Petitioner chooses to appeal he may not proceed in forma pauperis; an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

### IV. Conclusion

The Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, 3) **DENIES** permission to proceed in forma pauperis on appeal, and 4) **DENIES** Petitioner's pending motions.

**SO ORDERED.**

s/ Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

Dated: 2/27/2020